This is essentially after a lien. There is a bench trial with respect to quantity. It is Mr. Wooldridge's contention that the evidence was insufficient to find above the 280 grams of cocaine base that was foreseeable and attributable to him. I would suggest to you that there were no evidence to support the claim that Mr. Wooldridge was responsible for the use of the cocaine. There were three transactions, a June transaction, a July transaction, and a separate transaction with respect to an individual named Mr. Cruz. The evidence was insufficient with respect to finding the 280 grams of cocaine base. There was 200 grams of powder cocaine that Mr. Wooldridge sold to Dunstan and Mr. Hernandez. There was no evidence at all to suggest what their relationship was. Mr. Wooldridge was right on the scene. They had a phone call with him where he was selling the powder cocaine. The evidence simply was insufficient with respect to that June transaction to attribute any cocaine base to Mr. Wooldridge. With respect to the July transaction where Mr. Wooldridge was found to be in possession of 92 grams of cocaine base, I am suggesting to the court that it would be reasonably foreseeable and attributable to find that quantity with respect to Mr. Wooldridge. With respect to Mr. Cruz and that later August 31st transaction, Mr. Wooldridge was essentially taken out of the conspiracy. There was a phone call between Mr. Hernandez and Mr. Cruz where Mr. Hernandez was trying to purchase cocaine powder for Mr. Cruz. The very next day, Mr. Wooldridge calls asking about Mr. Cruz and Mr. Hernandez says, well, he's going to prison tomorrow. That's not going to be possible. There's no other communications with respect to Mr. Wooldridge and Mr. Hernandez with respect to Mr. Cruz. In fact, about 21 days passed, we don't hear from Mr. Wooldridge. There are numerous conversations with respect to Mr. Hernandez and Mr. Cruz arranging for a purchase of this quantity of cocaine powder. I'm suggesting to the court that the Mr. Hernandez, Mr. Cruz, Mr. Dunson transaction at the end of August is not foreseeable and attributable to Mr. Wooldridge. Is there any evidence in the record that would support a finding that Wooldridge had withdrawn from the conspiracy at that point? What I'm suggesting, Judge... Could you answer my question? Yes, I can. Is there any such evidence? No. Okay. I would suggest, though, with respect to that point, is we're looking about what's foreseeable and attributable to Mr. Wooldridge. And when we have Mr. Hernandez, who's essentially pushing Mr. Wooldridge out, it seems. Mr. Wooldridge had been arrested in late July. Mr. Hernandez, yes, is speaking to him, but sort of in the sense of I'm kind of trying to keep an eye on Mr. Wooldridge here. But he's pushing Mr. Wooldridge out in no uncertain terms, saying that Mr. Cruz is not going to be available. He's going to prison tomorrow on federal conspiracy charges. I would suggest to the court that it is not... the evidence would suggest that it's no longer an expectation of Mr. Wooldridge that there's going to be any powder transactions with respect to Mr. Cruz. It's not reasonably foreseeable, thus, for him to be thinking along the lines of the transaction with Mr. Cruz. Let's leave that. If the first and second transactions are properly included, all right, that meets the 280-gram threshold, doesn't it? It does, Judge. Now, on the first transaction, you admit that there is evidence that Wooldridge is the seller of the cocaine. He is the seller of the cocaine powder, yes. Okay. And there is evidence in the record that that cocaine powder that he sold is transformed or processed by his co-defendants into crack cocaine, or at least a fact finder could so conclude. Yes, Judge. And how much is unknown, but correct. All right. And certainly that processing is foreseeable to Wooldridge, who was himself a conspirator at that point. Well, that's our point. No, not necessarily. He's admitted that he is guilty of participation in a conspiracy to possess with intent to distribute crack cocaine. Correct. All right. And he sells cocaine or delivers cocaine to his co-defendants, who then process it into crack cocaine. And you say that there's something more that's necessary to hold him responsible for that amount? Yes, Judge, if I may just answer the question. Sure. There's an absence of evidence of any relationship between Mr. Hernandez, Mr. Dunston, and Mr. Wooldridge. All we know is that at that original transaction in June is that Mr. Wooldridge sold powder cocaine to Mr. Hernandez and Mr. Dunston. That's it. There's no... No, no. We know one further thing. That all three of them have subsequently admitted to being members of the same conspiracy at that time. They... We know that because they were all pleaded guilty. And then we get to a call and solace issue with respect to what's reasonable and perceivable. Wasn't there, just before you sit down, I thought there was a phone call between Hernandez and Wooldridge in late July, in which, if I've got it right, Hernandez says, all right, you want me to do it up, right, or are you going to... And then, well, just, I mean, is it going to come out extra, you think? Hernandez then says, I don't know, all right. Wooldridge says back, you do yours up first, though. If you don't get extra, then I'm going to whip it. I can't tell you that I fully grasp that. But my sense of it is that that's evidence the government is relying on to suggest that what they're talking about is the conversion of the one form to the other. For the July 31st transaction, Judge. Well, but why can't the fact finder conclude that apparently there was a basis for thinking that Wooldridge knows that the material, that the cocaine powder he gives is going to be transformed into cocaine, into crack? And my argument is simply that he knows that during that July 31st transaction, but I don't think that we can relate all the way back to June to know what the relationship of the parties was back in June. Thank you. Good morning, Your Honors. For the record, Michael Day. I'm from Connecticut. I represent Sergio Hernandez. May it please the Court, I'd like to reserve two minutes for rebuttal, please. Thank you. There are two issues before the Court presented by Mr. Hernandez. The first being whether the district court erred when it found 2.8 kilograms of cocaine base attributable to the defendant, and the second issue is whether the district court erred when it relied upon CORI material, that's the Massachusetts Connecticut Offender Record Information, as proof for the predicate offense for career offender purposes. I'd like to commence with the second issue and address the harmlessness that has been addressed by the government. The government has presented on appeal documents purporting to show predicate offenses for career offender purposes. The issue here is, there's a number of issues. First is the CORI material, this Court has apparently not passed upon or decided whether CORI material is indeed shepherd material for career offender purposes. Second, the government proposes that it can provide these state court records, which it does have authority to provide state court records on appeal on a sort of limited basis, U.S. v. Mercado. However, in U.S. v. Mercado and also U.S. v. Florentino, the presentation of this information on appeal did not concern shepherd material, and I would respectfully argue to the Court that there's something unique about shepherd material. There's an evidentiary nature to shepherd material. U.S. v. Brown, when there is a challenge at sentencing to material that is offered, say, through the pre-sentence report, more is required, and that's exactly what occurred in this case. There was a preliminary sentencing hearing. There was a challenge to the representations in the PSR of the CORI material. Thereafter, it was indicated in the PSR that certified copies of the convictions were ordered but not yet received. The Court certainly found this to be a very important issue, delayed sentencing, and then reconvened sentencing. At that second sentencing hearing, none of this information was presented, and the Court proceeded based upon these CORI representations. This case is very similar to U.S. v. Bryant, where there was New York State police information, national crime information, and the case was remanded to the trial court for a proper hearing to determine whether that was CORI material. You said earlier that we haven't passed on CORI material, which is my understanding. I had thought, tell me if I have it wrong, that you can rely on representations in the PSR even if you don't have the shepherd documents, but you can't rely, we said in Bryant, on representations about the New York criminal investigation information. Do I have that right? I believe that's correct. Okay, so the thing that assumes the gap is, okay, the PSR here was relying on CORI information. Yes, sir. And the question then is, is CORI information sufficiently reliable that you could rely on it when it's put there, even though it's not shepherd documents? Or is the CORI information like the New York records that we said in Bryant weren't reliable? I'm sorry, did you say more reliable, Your Honor? Is the CORI somehow more reliable than the New York? And is that open or is that, we haven't squarely resolved that issue. I believe that's accurate. Okay, do we have anything here to tell us whether the CORI records are something that you should be relying on or something that we should have skepticism about? Your Honor, I don't think we do. However, what I will say is there was a challenge, obviously, in sentencing to this, and there was a discussion about documents that were provided where one sentence was kind of written on top of the other, was it increased, subbed down, there was some confusion over this. So I think at least, kind of answering the court's question, there was enough of a challenge here where more was required. And the more, when there is a challenge, you're saying must be the actual shepherd documents? That is my argument to the court, Your Honor. And for this court to undertake the analysis of documents that are put into a brief at the end of a brief, I think because of U.S. v. Brown, the more is required, it essentially is placing this court into a fact-finding role, and that would be best served by the trial court. And lastly, though, with respect to the documents that now are before us on appeal that they've tried to put before us, do you raise any issue with whether there might be problems? I mean, is there a practical benefit to you of this being remanded? What will come out of it? I'm just curious. I'm quite frankly not sure, Your Honor, what exactly will come out of it. But what I can say is that the information that's been provided, if I may just finish, Your Honor, answering Your Honor, the information that's been provided is essentially a photocopy, and I'm not doubting anything with respect to that, but there must be an independent analysis. And the problem here is that it's far past sentencing. The defendant does not have the ability to raise this issue, to object, and for the court to assess the quality of this information, it is after the fact, and that is an impingement upon the defendant's rights. With respect to the drug quantity issue, I'll rely upon my brief and take it up in rebuttal. Thank you. Thank you. Mr. Barron, and may it please the Court, Mark Quinlivan on behalf of the United States. Mr. Quinlivan, could you start with the issue that we just finished with, the so-called quarry documents? Absolutely, Judge Steyer, and let me begin with my understanding of what this Court said in Bryant. What this Court said is that the government has a modest burden in establishing the existence of a prior conviction, and that burden can be met by a representation in the pre-sentence report. However, if the defendant objects to the representation in the pre-sentence report, and Mr. Hernandez did do so in this case, the Court in Bryant said something more is required. Where I disagree with my friend is that this Court in Bryant quite clearly stated that it was not adopting Shepard as the touchstone for the additional materials that could be required. In fact, this Court left it to the district court in the first instance to make that determination. We've submitted the docket sheets for these convictions. In our view, under Mercado, this Court can take judicial notice of it. If this Court disagrees and thinks that it would be better for the district court in the first instance to pass on that, then we would submit that the appropriate course is to remand for the limited purpose of determining whether or not the government had met its burden of establishing the existence of these convictions. It seems to me that there was just one step that you might have skipped over, or I'm not understanding how the Bryant works. When you say we didn't require them to come back with Shepard documents, we just said there had to be something that would be more reliable. I thought in Bryant we thought the type of document that was being referred to was not the kind of thing that was itself sufficiently reliable. I believe, and my reading of Bryant is that this Court, if no objection had been raised in the district court to the PSR,  But once the objection was raised, that no longer was reliable. But we said the thing that would be reliable needn't be Shepard documents. Now we have reliance on something called CORI. That's right. So have we taken a position as to whether if the district court could have said, well I know that New York stuff wasn't good enough when you object, but CORI is good enough. No, this Court has not. So how are we supposed to think about that issue? Well, one issue would be don't worry about it, because go back and do the Shepard documents. It's just a little bit in tension with Bryant, which seems to have suggested you don't always have to have Shepard documents. That's right. And now we've got something different than the kind of documents in Bryant, CORI documents. So what tools are we supposed to use to evaluate whether something short of a Shepard document could qualify and whether this would be such a thing? And I guess, Judge Barron, it seems that in one sense it would be a question of first impression in this court, because, again, the Bryant court remanded it to the district court to consider that in the first instance. It would be a question of first impression that you would be asking us to answer without the benefit of any fact-based evaluation by the district court of how reliable these documents are, what function they serve, and without the defendant having an opportunity to make a reasoned objection to them. I take your point, Judge Selye, and that's why I've said that if this court thinks that the better course would be for the district court to consider this in the first instance with the defendant having the ability to object, then the appropriate course, in our view, would be to remand to consider whether, not for an entire resentencing, but to consider whether the government had established the fact or existence of the prior conviction. Just so I understand, Selye, the information, the CORI information that's referenced in the PSR, that's different then or the same as the information you're asking us to take notice of on appeal? It's different. It's different? It's different, basically. What are you giving us here? The actual docket sheets of the underlying document. Which are Shepard documents? There's something else that's not also quite Shepard documents. Well, it is not a certified copy of the judgment of conviction, but this court in a different case, United States v. McKenzie, said that, for example, it attested to a version of the electronic docket sheet of a state court conviction was sufficient to establish the existence of the conviction. But not in this context. Not proffered for the first time on appeal. No, I'm just trying to figure out what the district court is supposed to do on remand, because he's now got two different sets of documents. And we have a preference as to which one, or two different things. I don't think he would have two different things. The CORI was simply the representation in the pre-sentence report that, based on a review of the defendant's CORI, he has these prior convictions. On remand, the district court would be presented either with, as we have done, the docket sheets and possibly even the certified copies of the judgments. You wouldn't think it would be prudent for us to give the district court the impression that it would be fine for him to now just resolve this by taking the CORI representation? Because then that could just generate a separate repeal on whether that was a mistake, which would seem quite wasteful. And if I felt I had a good faith basis to distinguish, once an objection is raised, the CORI system from the New York record systems that were at issue in Bryant, I would have made that argument. We instead said that you could bypass that question. We have what amounts to an institutional problem here, because the issue on remand, if there is a remand, is going to be twofold. Are these convictions convictions of the defendant, and do they qualify as predicates sufficient to justify the sentence? How those convictions can be proved is a matter that normally the district court would pass on in the first instance, and depending upon how the government chooses to go about proving them, what material the government chooses to proffer at that time, which apparently would be the best material available, maybe, as you say, the certified copies of the convictions, the district court will make a ruling. So it's not really institutionally, it doesn't seem to make much sense for us to specify what materials the district court should look at if we do remand. Judge Sagan, I didn't mean to suggest that the court do so, simply that the remand would be for the district court to consider whether the government had met its burden of establishing the existence of the prior convictions. Just briefly on Mr. Wooldridge's claims. What troubles me about that is just what you said a minute ago, which is that if you had some good faith reason to think that the Corey records were substantially better than the New York records, you would have said so. Which is not anything wrong with that. That was helpful to us to know that, but it just does make me then wonder why we would want to leave the district court with the impression that you might then have a reason below to think the Corey records are good. Well, let me clarify, Judge Barron, because what the pre-sentence report said is that based on the defendant's Corey records, it had identified these convictions. The probation office was seeking the records at issue. The sentencing hearing was continued for this very reason. One of the docket sheets at issue here actually was presented to the district court, and there was a debate about whether that was a conviction for distribution or possession. My understanding is the probation office had the other two at the time, but they weren't formally made part of the record. So it is not an instance where the probation office simply said the Corey reports. They actually said they were seeking these additional records. The sentencing hearing was reconvened for that very purpose. Just very briefly on Mr. Wooldridge's claims, the superseding information alleged that he pled guilty to alleged that the conspiracy began beginning in August of 2011 and continuing thereafter until sometime in September 2012. That included the June 25, 2012, transaction in which Mr. Wooldridge sold 200 grams of powder cocaine to his co-defendants. That clearly can be taken in conjunction with the July 31 sale where he was found with 93 grams of crack cocaine. That itself would get Mr. Wooldridge above the 280 grams or more threshold. And just a brief comment on this one-to-one conversion ratio, because I think there's been a... I just want to clarify the point. The statute requires that it be, in this case, to trigger the 10-year mandatory minimum. 280 grams or more of a mixture or substance containing a detectable amount of cocaine base. Similarly, the guidelines define cocaine base to be crack cocaine, meaning a typical mixture of powder cocaine or cocaine hydrochloride and baking soda. It does not, neither for purposes of the statute nor for purposes of the guidelines, does it have to be pure cocaine base. And what you have in this case is the defendants repeatedly stating on interstep conversations that they were getting more than 100 grams of crack cocaine from the powder cocaine that they had purchased. The district court, therefore, could reasonably have concluded from that evidence that there was basically a one-to-one ratio between powder cocaine and crack cocaine. Thank you. I would like to address the issue. This error, if in fact the court finds that there was error with respect to the sufficiency of the evidence, I would suggest to the court that it's not harmless. I would suggest to the court that there was a Supreme Court case, Polina-Martinez. That case does deal with the guidelines. It's a procedural error with respect to sentencing. It's dealing with the guidelines and essentially suggesting that if you have an error with respect to the guideline range, that that in and of itself may be presumptively affect the substantial right. I would suggest that similarly with respect to here, we have an error with respect to the statutory range. As opposed to 10 years to life, we're suggesting that the statutory range should have been 5 years to 40 years. And that, frankly, is a procedural error that affects the substantial rights of Mr. Woldridge. I would also suggest that a finding of less than the 280 grams of cocaine powder would result in a different guideline range as well, because in Mr. Woldridge's case, there was a career offender finding. But essentially, because you have a difference with respect to a 40-year maximum and a life maximum, that career offender guideline would also be lower and the range would be different. Thank you. Thank you, Your Honors. Briefly, as counsel has indicated in his answer to Your Honors, apparently we don't have any, counsel has not made the argument that there is any greater value or weight to the Quarry material in comparison to the New York material. We simply, that simply hasn't happened. And as a result, this case really is very much like Bryant, where this case should be remanded for a hearing concerning this issue. Placing this court in the role of fact finder, I think, is problematic. I think, in addition, evaluating what is at the end of the brief is, those documents is difficult, and as counsel has indicated, those aren't even certified copies. So with that, Your Honors, I would respectfully request that this case be remanded to the district court. Thank you very much. Thank you.